# Exhibit A

# DEPO IQ, INC.,

## PROPRIETARY INFORMATION AND INVENTIONS ASSIGNMENT AGREEMENT

In consideration of and as a condition to my engagement or continued engagement as an employee, director, consultant, intern or independent contractor by the undersigned Company (or any of its subsidiaries, parents, affiliates, successors and assigns, which shall all be deemed to be included within the defined term "***Company***"), the Company's willingness to share certain confidential and proprietary information and trade secrets, the Company's willingness to provide job-related training and access to highly-confidential Customer information to me, and the compensation paid to me now and during my engagement with Company, I hereby enter into this **PROPRIETARY INFORMATION AND INVENTIONS ASSIGNMENT AGREEMENT** (the "***Agreement***") as a "***Service Provider***" to the Company and agree as follows.

## CERTAIN KEY TERMS

The following terms shall have the meanings set forth below. Other defined terms shall have the meanings given them throughout the Agreement. Defined terms used but not defined herein shall have the meaning given such terms with the accompanying Employment Offer Letter delivered to me on or about the date hereof.

"***Company Inventions***" means any Inventions assigned to Company or to a third party as directed by Company, pursuant to this Agreement.

"***Confidential Information***" means any and all confidential knowledge, data or information of Company (tangible and intangible, written and oral, including any information contained or transmitted through any electronic medium), including without limitation, (a) Inventions and any information relating to any Inventions; (b) information regarding research, development, technical designs or plans, source code or software programs, applications, new products, marketing and selling, business plans, budgets and unpublished financial statements, licenses, prices and costs, margins, discounts, credit terms, pricing and billing policies, quoting procedures, methods of obtaining business, forecasts, future plans and potential strategies, financial projections and business strategies, operational plans, financing and capital-raising plans, activities and agreements, internal services and operational manuals, methods of conducting Company business, suppliers and supplier information, and purchasing; (b) any and all Inventions; (c) information regarding customers and potential customers of Company, including customer lists, names, representatives, their needs or desires with respect to the types of products or services offered by Company, proposals, bids, contracts and their contents and parties, the type and quantity of products and services provided or sought to be provided to customers and potential customers of Company and other non-public information relating to customers and potential customers; (d) information regarding any of Company's business partners and their services, including names, representatives, proposals, bids, contracts and their contents and parties, the type and quantity of products and services received by Company, and other non-public information relating to business partners; (e) information regarding personnel, employee lists, compensation, and employee skills; and (f) any other non-public information which a competitor of Company could use to the competitive disadvantage of Company.

"***Copyright***" means the exclusive legal right to reproduce, perform, display, distribute and make derivative works of a work of authorship (as a literary, musical, or artistic work) recognized by the laws of any jurisdiction or country.

"***Excluded Inventions***" means any existing Inventions that I have, alone or jointly with others, prior to commencement of my Service, discovered, developed, created, conceived, reduced to practice, made, learned, or written, or caused to be discovered, developed, created, conceived, reduced to practice, made, learned, or written, that I consider to be my property or the property of third parties, and that are not to be assigned to Company pursuant to this Agreement.

"***Intellectual Property Rights***" means all intellectual property rights worldwide arising under statutory or common law, and whether or not perfected, including, without limitation, all (i) patents, patent applications and patent rights; (ii) Copyrights; (iii) rights relating to the protection of trade secrets and Confidential Information; (iv) any other proprietary rights relating to intangible property; (v) trademarks, service marks, trade dress and similar rights; (vi) divisions, continuations, renewals, reissues and extensions of the foregoing (as and to the extent applicable) now existing, hereafter filed, issued or acquired; and (vii) all goodwill associated with any of the foregoing.

"***Inventions***" means any and all trade secrets, concepts, inventions, discoveries, mask works, ideas, processes, formulas, algorithms, software, innovations, source or object code, data, programs, applications, websites, research, experiments, assays, results, molecules, other works of authorship, know-how, improvements, discoveries, developments, designs and techniques and any other proprietary technology.

"***Moral Rights***" means all paternity, integrity, disclosure, moral, withdrawal, "artist's", special and any other similar rights recognized by the laws of any jurisdiction or country.

"***Other Inventions***" means Inventions in which I have or may have an interest, as of the commencement of my Service or thereafter, other than Company Inventions and Excluded Inventions.

"***Service***" means the period of time during which I am engaged as an employee, director or consultant of Company.

"***Third Party Information***" shall mean confidential and/or proprietary knowledge, data or information received from third parties.

## AGREEMENT

NOW, THEREFORE, the Company and I wish to enter into this Agreement as follows:

**1. CONFIDENTIAL INFORMATION PROTECTIONS.**

**1.1 Recognition of Company's Rights; Nondisclosure**. I understand and acknowledge that my Service to the Company creates a relationship of confidence and trust with respect to Company's Confidential Information (as defined below) and that Company has a protectable interest therein. At all times during and after my Service, I will hold in confidence and will not disclose, use, lecture upon, or publish any of Company's Confidential Information, except as such disclosure, use or publication may be required in connection with my work for Company, or unless an officer of Company expressly authorizes such disclosure. I will obtain Company's written approval before publishing or submitting for publication any material (written, oral, or otherwise) that discloses and/or incorporates any Confidential Information. I hereby assign to Company any rights I may have or acquire in such Confidential Information and recognize that all Confidential Information shall be the sole and exclusive property of Company and its assigns. I will take all reasonable precautions to prevent the inadvertent accidental disclosure of Confidential Information. Notwithstanding the foregoing, pursuant to 18 U.S.C. Section 1833(b), I shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that: (1) is made in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney, and solely for the purpose of reporting or investigating a suspected violation of law; or (2) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

**1.2 Exceptions**. Notwithstanding the foregoing, it is understood that, at all such times, I am free to use information which was known to me prior to my Service with Company or which is generally known in the trade or industry through no breach of this Agreement or other act or omission by me, and I am free to discuss the terms and conditions of my Service with others to the extent expressly permitted by Section 7 of the National Labor Relations Act.

**1.3 Third Party Information**. I understand, in addition, that Company has received and in the future will receive Third Party Information subject to a duty on Company's part to maintain the confidentiality of such Third Party Information and to use it only for certain limited purposes. During the term of my Service and thereafter, I will hold Third Party Information in confidence and will not disclose to anyone (other than Company personnel who need to know such information in connection with their work for Company) or use, except in connection with my work for Company, Third Party Information or unless expressly authorized by an officer of Company in writing.

**1.4 Term of Nondisclosure Restrictions**. I understand that Confidential Information and Third Party Information is never to be used or disclosed by me except as expressly permitted herein. If a temporal limitation on my obligation not to use or disclose such information is required under applicable law, and the Agreement or its restriction(s) cannot otherwise be enforced, I agree and Company agrees that the two year period after the date my Service ends will be the temporal limitation relevant to the contested restriction; ***provided, however,*** that this

sentence will not apply to trade secrets protected without temporal limitation under applicable law.

**1.5 No Improper Use of Information of Prior Employers and Others**. During my Service to the Company, I will not improperly use or disclose confidential information or trade secrets, if any, of any former employer or any other person to whom I have an obligation of confidentiality, and I will not bring onto the premises of Company any unpublished documents or any property belonging to any former employer or any other person to whom I have an obligation of confidentiality unless consented to in writing by that former employer or person.

**2. ASSIGNMENTS OF WORK PRODUCT & INVENTIONS.**

**2.1 Ownership of Work Product**. I agree that Company will exclusively own all work product that is made by me (solely or jointly with others) within the scope of my Service, and I hereby irrevocably and unconditionally assign to Company all right, title and interest worldwide in and to such work product. I acknowledge that all original works of authorship which are made by me (solely or jointly with others) within the scope of my Service and which are protectable by Copyright are "works made for hire," pursuant to United States Copyright Act (17 U.S.C., Section 101). I understand and agree that I have no right to publish on, submit for publishing, or use for any publication any work product protected by this section, except as necessary to perform services for Company.

**2.2 Assignment of Company Inventions**. Except for Excluded Inventions and Other Inventions, I hereby assign to Company all my right, title, and interest in and to any and all Inventions (and all Intellectual Property Rights therein or with respect thereto) made, conceived, reduced to practice, or learned by me, either alone or with others, during or prior to the period of my Service to Company, and all such assigned Inventions are hereby deemed Company Inventions. To the extent required by applicable Copyright laws and not otherwise assignable pursuant hereto, I agree to assign in the future (when any copyrightable Inventions are first fixed in a tangible medium of expression) my Copyright rights in and to such Inventions. Any assignment of Company Inventions (and all Intellectual Property Rights with respect thereto) hereunder includes an assignment of all Moral Rights. To the extent such Moral Rights cannot be assigned to Company and to the extent the following is allowed by the laws in any country where Moral Rights exist, I hereby unconditionally and irrevocably waive the enforcement of such Moral Rights, and all claims and causes of action of any kind against Company or related to Company's customers, with respect to such rights. I further acknowledge and agree that neither my successors-in-interest nor legal heirs retain any Moral Rights in any Company Inventions (and any Intellectual Property Rights with respect thereto).

**2.3 Excluded Inventions and Other Inventions**. Set forth on the signature page hereto is a list describing all Excluded Inventions. If no such list is attached, I represent and agree that it is because I have no Excluded Inventions. If disclosure of any such Invention herein would cause me to violate any prior confidentiality agreement, I understand that I am not to list such Inventions herein, but am to inform the Company in writing in the location where I would otherwise disclose such Excluded Invention that all Excluded Inventions have not been listed for that reason. I agree that I will not incorporate, or permit to be incorporated, into any Company Invention any Excluded Inventions without the Company's prior written consent. I will advise the Company promptly in writing of any Invention that I believe constitutes an Excluded Invention or Other Invention and is not otherwise disclosed herein. I acknowledge and agree that if I use any Excluded Inventions or any Other Inventions in the scope of my Service, or if I include any Excluded Inventions or Other Inventions in any product or service of Company, or if my rights in any Excluded Inventions or Other Inventions may block or interfere with, or may otherwise be required for, the exercise by Company of any rights assigned to Company under this Agreement, I will immediately so notify Company in writing. Unless Company and I agree otherwise in writing as to particular Excluded Inventions or Other Inventions, I hereby grant to Company, in such circumstances (whether or not I give Company notice as required above), a non-exclusive, perpetual, transferable, fully-paid and royalty-free, irrevocable and worldwide license, with rights to sublicense through multiple levels of sublicenses, to reproduce, make derivative works of, distribute, publicly perform, and publicly display in any form or medium, whether now known or later developed, make, have made, use, sell, import, offer for sale, and exercise any and all present or future rights in, such Excluded Inventions and Other Inventions. To the extent that any third parties have rights in any such Other Inventions, I hereby represent and warrant that such third party or parties have validly and irrevocably granted to me the right to grant the license stated above.

**2.4 Obligation to Keep Company Informed**. During the period of my Service, I will promptly and fully disclose to Company in writing all Inventions authored, conceived, or reduced to practice by me, either alone or jointly with others.

**2.5 Government or Third Party**. I agree that, as directed by Company, I will assign to a third party, including without limitation the United States, all my right, title, and interest in and to any particular Company Invention.

**2.6 Enforcement of Intellectual Property Rights and Assistance**. I will assist Company in every proper way to obtain, and from time to time enforce, United States and foreign Intellectual Property Rights and Moral Rights relating to Company Inventions in any and all countries. To that end I will execute, verify and deliver such documents and perform such other acts (including appearances as a witness) as Company may reasonably request for use in applying for, obtaining, perfecting, evidencing, sustaining and enforcing such Intellectual Property Rights and the assignment thereof. In addition, I will execute, verify and deliver assignments of such Intellectual Property Rights to Company or its designee, including the United States or any third party designated by Company. My obligation to assist Company with respect to Intellectual Property Rights relating to such Company Inventions in any and all countries will continue beyond the termination of my Service, but Company will compensate me at a reasonable rate after my termination for the time actually spent by me at Company's request on such assistance. In the event Company is unable for any reason, after reasonable effort, to secure my signature on any document needed in connection with the actions specified in the preceding paragraph, I hereby irrevocably designate and appoint Company and its duly authorized officers and agents as my agent and attorney in fact, which appointment is coupled with an interest, to act for and on my behalf to execute, verify and file any such documents and to do all other lawfully permitted acts to further the purposes of the preceding paragraph with the same legal force and effect as if executed by me. I hereby waive and quitclaim to Company any and all claims, of any nature whatsoever, which I now or may hereafter have for infringement of any Intellectual Property Rights assigned under this Agreement to Company.

**2.7 Incorporation of Software Code**. To the extent that I am required to develop or create software code in connection with my Service to the Company, I agree that I will not incorporate into any Company software or otherwise deliver to Company any software code licensed under the GNU General Public License or Lesser General Public License or any other license that, by its terms, requires or conditions the use or distribution of such code on the disclosure, licensing, or distribution of any source code owned or licensed by Company **except** in strict compliance with Company's policies regarding the use of such software.

**3. RECORDS**. I agree to keep and maintain adequate and current records (in the form of notes, sketches, drawings and in any other form that is required by Company) of all Confidential Information developed by me and all Company Inventions made by me during the period of my Service at Company, which records will be available to and remain the sole property of Company at all times.

**4. DUTY OF LOYALTY TO COMPANY.**

**4.1 DURING SERVICE**. I agree that during the period of my Service to Company, I will not, without Company's express written consent, directly or indirectly engage in any employment or business activity which is directly or indirectly competitive with, or would otherwise conflict with, my Service to Company.

**4.2 NO SOLICITATION OF EMPLOYEES, CONSULTANTS OR CONTRACTORS**. I agree that during the period of my Service and for the one year period after the date my Service ends for any reason, including but not limited to voluntary termination by me or involuntary termination by Company, I will not, as an officer, director, employee, consultant, owner, partner, or in any other capacity, either directly or through others, except on behalf of Company, solicit, induce, encourage, or participate in soliciting, inducing or encouraging any person known to me to be an employee, consultant, or independent contractor of Company to terminate his or her relationship with Company, even if I did not initiate the discussion or seek out the contact.

**4.3 NO SOLICITATION OF CUSTOMERS**. I acknowledge and agree that information about Company's customers and Company's marketing strategy with respect to those customers constitutes Confidential Information and may be a trade secret of the Company, and I agree that I will not disclose to any other party or use any Company trade secrets. I further agree that during the course of my Service, and for a period of twelve (12) months immediately following the termination of my Service for any reason, whether with or without cause, at the option either of the Company or myself, with or without notice, or twelve (12) months from the date of any court order enforcing all or part of this Agreement, whichever is later, I will not, directly or indirectly, individually or on behalf of any other person, firm, partnership, corporation, or business entity of any type, solicit to the detriment of Company and/or for the benefit of any competitor of Company, take away or attempt to take away, in whole or in part, any Customer of the Company or otherwise interfere with the Company's relationship with any such Customer; and I will not use trade secrets or other unfair business practices to divert or attempt to divert from the Company any Customer of Company. For purposes of this paragraph, "***Customer***" shall mean any person, company or business entity (i) to which the Company sells or licenses goods or services and (ii) that I had contact with or performed services for during my Service with the Company or about whom I had access to Confidential Information by virtue of my Service to the Company.

**4.4 NON-DISPARAGEMENT**. I agree that during the period of my Service and for the one year period after the date my Service ends for any reason, including but not limited to voluntary termination by me

or involuntary termination by Company, I will not, as an officer, director, employee, consultant, owner, partner, or in any other capacity, either directly or through others, disparage Company or any of its officers, directors, directors, employees, consultants, owners or partners, or any Company products or services.

**5. Reasonableness of Restrictions.**

**5.1** I agree that I have read this entire Agreement and understand it. I agree that this Agreement does not prevent me from earning a living or pursuing my career. I agree that the restrictions contained in this Agreement are reasonable, proper, and necessitated by Company's legitimate business interests. I represent and agree that I am entering into this Agreement freely and with knowledge of its contents with the intent to be bound by the Agreement and the restrictions contained in it.

**5.2** In the event that a court finds this Agreement, or any of its restrictions, to be ambiguous, unenforceable, or invalid, I and Company agree that the court will read the Agreement as a whole and interpret the restriction(s) at issue to be enforceable and valid to the maximum extent allowed by law. If the court declines to enforce this Agreement in the manner provided in this subsection, Company and I agree that this Agreement will be automatically modified to provide Company with the maximum protection of its business interests allowed by law and I agree to be bound by this Agreement as modified.

**6. No Conflicting Agreement or Obligation.** I represent that my performance of all the terms of this Agreement and my Service to Company does not and will not breach any agreement to keep in confidence information acquired by me in confidence or in trust prior to my Service to Company. I have not entered into, and I agree I will not enter into, any agreement either written or oral in conflict with this Agreement.

**7. Return of Company Property.** When I leave the Service of Company, I will deliver to Company any and all drawings, notes, memoranda, specifications, devices, formulas and documents, together with all copies thereof, and any other material containing or disclosing any Company Inventions, Third Party Information or Confidential Information of Company. I agree that I will not copy, delete, or alter any information contained upon my Company computer or Company equipment before I return it to Company. In addition, if I have used any personal computer, server, or e-mail system to receive, store, review, prepare or transmit any Company information, including but not limited to, Confidential Information, I agree to provide Company with a computer-useable copy of all such Confidential Information and then permanently delete and expunge such Confidential Information from those systems; and I agree to provide Company access to my system as reasonably requested to verify that the necessary copying and/or deletion is completed. I further agree that any property situated on Company's premises and owned by Company, including disks and other storage media, filing cabinets or other work areas, is subject to inspection by Company's personnel at any time with or without notice. Prior to leaving, I will cooperate with Company in attending an exit interview and completing and signing Company's termination statement if required to do so by Company.

**8. Legal and Equitable Remedies.** I agree that it may be impossible to assess the damages caused by my violation of this Agreement or any of its terms. I agree that any threatened or actual violation of this Agreement or any of its terms will constitute immediate and irreparable injury to Company, and Company will have the right to enforce this Agreement and any of its provisions by injunction, specific performance or other equitable relief, without bond and without prejudice to any other rights and remedies that Company may have for a breach or threatened breach of this Agreement.

**9. Notices.** Any notices required or permitted under this Agreement will be given to Company at its headquarters location at the time notice is given, labeled "Attention Chief Executive Officer," and to me at my address as listed on Company payroll, or at such other address as Company or I may designate by written notice to the other. Notice will be effective upon receipt or refusal of delivery. If delivered by certified or registered mail, notice will be considered to have been given five business days after it was mailed, as evidenced by the postmark. If delivered by courier or express mail service, notice will be considered to have been given on the delivery date reflected by the courier or express mail service receipt.

**10. General Provisions.**

**10.1 Governing Law; Consent to Personal Jurisdiction**. This Agreement will be governed by and construed according to the laws of the State of where Company's principal headquarters are located (the "***Company' s State***"), as such laws are applied to agreements entered into and to be performed entirely within the Company's State between residents of Company's State. I hereby expressly consent to the personal jurisdiction and venue of the state and federal courts located in Company's State for any lawsuit filed there against me by Company arising from or related to this Agreement.

**10.2 Severability**. In case any one or more of the provisions, subsections, or sentences contained in this Agreement will, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability will not affect the other provisions of this Agreement, and this Agreement will be

construed as if such invalid, illegal or unenforceable provision had never been contained in this Agreement. If moreover, any one or more of the provisions contained in this Agreement will for any reason be held to be excessively broad as to duration, geographical scope, activity or subject, it will be construed by limiting and reducing it, so as to be enforceable to the extent compatible with the applicable law as it will then appear.

**10.3 Successors and Assigns**. This Agreement is for my benefit and the benefit of Company, its successors, assigns, parent corporations, subsidiaries, affiliates, and purchasers, and will be binding upon my heirs, executors, administrators and other legal representatives.

**10.4 Survival**. This Agreement shall survive the termination of my Service, regardless of the reason, and the assignment of this Agreement by Company to any successor in interest or other assignee.

**10.5 Employment At-Will**. I agree and understand that nothing in this Agreement will change my at-will employment status or confer any right with respect to continuation of Service by Company, nor will it interfere in any way with my right or Company's right to terminate my Service at any time, with or without cause or advance notice.

**10.6 Waiver**. No waiver by Company of any breach of this Agreement will be a waiver of any preceding or succeeding breach. No waiver by Company of any right under this Agreement will be construed as a waiver of any other right. Company will not be required to give notice to enforce strict adherence to all terms of this Agreement.

**10.7 Export**. I agree not to export, re-export, or transfer, directly or indirectly, any U.S. technical data acquired from Company or any products utilizing such data, in violation of the United States export laws or regulations.

**10.8 Counterparts**. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which shall be taken together and deemed to be one instrument. This Agreement may also be executed and delivered by facsimile signature, PDF or any electronic signature complying with the U.S. federal ESIGN Act of 2000 (e.g., www.docusign.com).

**10.9 Advice of Counsel**. **I ACKNOWLEDGE THAT, IN EXECUTING THIS AGREEMENT, I HAVE HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT LEGAL COUNSEL, AND I HAVE READ AND UNDERSTOOD ALL OF THE TERMS AND PROVISIONS OF THIS AGREEMENT. THIS AGREEMENT WILL NOT BE CONSTRUED AGAINST ANY PARTY BY REASON OF THE DRAFTING OR PREPARATION OF THIS AGREEMENT.**

**10.10 California Specific Inventions Laws.** If I live in California, I recognize that this Agreement will not be deemed to require assignment of any Invention that is covered under California Labor Code Section 2870(a) (the "***Specific Inventions Law***") except for those Inventions that are covered by a contract between Company and the United States or any of its agencies that require full title to such patent or Invention to be in the United States. At the time that I disclose to the Company any Inventions authored, conceived or reduced to practice by me, or at the time that I otherwise should do so under this Agreement, I will advise Company in writing of any Inventions that I believe fully qualify for protection under the provisions of the Specific Inventions Law; and I will at that time provide to Company in writing all evidence necessary to substantiate that belief. Company will keep in confidence and will not use for any purpose or disclose to third parties without my consent any confidential information disclosed in writing to Company pursuant to this Agreement relating to Inventions that qualify fully for protection under the Specific Inventions Law. I will preserve the confidentiality of any Invention that does not fully qualify for protection under the Specific Inventions Law.

**10.11 California Limited Exclusion Notification**. If I live in California, I certify that this serves as notification in accordance with California Labor Code Section 2872 that the foregoing Agreement between me and Company does not require me to assign or offer to assign to Company any Invention that I develop entirely on my own time without using Company's equipment, supplies, facilities or trade secret information, except for those Inventions that either: (i) relate at the time of conception or reduction to practice to Company's business, or actual or demonstrably anticipated research or development; or (ii) result from any work performed by me for Company.

***[Signature Page Follows.]***

**WHEREAS,** the undersigned parties hereby agree to and execute this Proprietary Information and Inventions Assignment Agreement effective as of the Service Provider's signature below.

**DEPO IQ, INC.:**

*(Signed):* DocuSigned by: John Sanchez 292E39EDDAE2413...
Name: John Sanchez
Title: CEO
Email: john@depoiq.com

**SERVICE PROVIDER:**

*(Signed):* DocuSigned by: 1A2DE336E71B410...
Name: AONUSHKA AERON
Email: aonushkaaeron@gmail.com

All Excluded Inventions of Service Provider are set forth below:

*Additional pages may be appended as needed.* ***Info Excluded Inventions are listed, Service Provider represents and agrees that no Excluded Inventions exist.***

* * * * *

*Signature Page to Proprietary Information and Inventions Assignment Agreement*